Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA 19505
Attorney ID # 306521
610-845-3803
610-845-3903 (fax)
Joshua@PrinceLaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Michael L. Keyes**, | : | |
| | : | |
| **Jonathan K. Yox**, | : | |
| | : | |
| **Plaintiffs** | : | Civil Action  # |
| | : | |
| v. | : | |
| | : | |
| **Eric H. Holder, Jr.,** | : | |
| Attorney General of the United States | : | |
| | : | |
| **B. Todd Jones**, | : | |
| Director of the Bureau of Alcohol, Tobacco, | : | |
| Firearms and Explosives | : | |
| | : | |
| **James B. Comey** | : | Complaint – Civil Rights |
| Director of the Federal Bureau of | : | |
| Investigation | : | |
| | : | |
| **United States of America** | : | |
| | : | |
| **Defendants** | : | |

**COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

NOW COMES Plaintiffs Michael L. Keyes and Jonathan K. Yox, by and through

their attorneys, Joshua Prince, Esq. and Prince Law Offices, P.C., and complain of

Defendants as follows:

## INTRODUCTION

1. This is an action to uphold the Constitutional right to keep and bear arms, which "guarantee[s] the individual right to possess and carry" firearms and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 2797, 2821 (2008).

2. In contravention to Plaintiffs' fundamental Second Amendment right to keep and bear arms in their private capacity, Defendants have collectively and separately prohibited a certain class of individuals from obtaining, possessing and utilizing firearms in their private capacity, while permitting those same individuals to obtain, possess and utilize firearms in their official capacity as a law enforcement officer, pursuant to 18 U.S.C. § 925(a)(1).

3. Specifically, individuals who have been involuntarily committed are prohibited in their private capacity from acquiring, possessing, or utilizing a firearm under 18 U.S.C. § 922(g), while being permitted to acquire, possess and utilize firearms when benefiting, in an official capacity, "United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof." 18 U.S.C. § 925(a)(1).

4. However, those individuals are not afforded any means to demonstrate following their release from commitment their fitness to regain their Second Amendment right to acquire, possess, and utilize a firearm in their private capacity.

5. This ban on individuals acquiring, possessing, and utilizing firearms in their private capacity based solely on the fact of a single, isolated past involuntary

commitment is an overbroad infringement on the Second Amendment because there is no reasonable procedure pursuant to which an individual could regain their Second Amendment Rights upon demonstrating their current mental and emotional fitness.

6.   As a consequence of this overbroad ban, sane, trustworthy, competent individuals that are not a threat to themselves or others and are not in any way mentally ill are forever prohibited from exercising their Second Amendment rights by the bare fact of a one-time involuntary commitment without consideration of individual present circumstances.

## PARTIES

7.   Plaintiff Michael L. Keyes, a Master Trooper with the Pennsylvania State Police, is a natural person and citizen of Pennsylvania and the United States, residing in Duncannon, Perry County, Pennsylvania, who was involuntarily committed as an adult at Holy Spirit Hospital, Cumberland County, in 2006. Mr. Keyes presently intends to purchase and possess a handgun and long gun for self-defense within his home, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action. Although Plaintiff is prohibited in his private capacity from possessing and using firearms because of Defendants' active enforcement of the policies complained of in this action, Defendants' active policies permit him to possess and use firearms in his official capacity as a law enforcement officer and which Plaintiff actively does in his employment for the Pennsylvania State Police (hereinafter, "PSP").

8. Plaintiff Jonathan K. Yox, a former U.S. Army Corporal of the 82nd Airborne, who was honorably discharged, is a natural person and citizen of Pennsylvania and the United States, residing in Glenmoore, Chester County, Pennsylvania, who was involuntarily committed as a juvenile at York Hospital, Lebanon County, in 2006. Mr. Yox presently intends to purchase and possess a handgun and long gun for self-defense within his home, but is prevented from doing so only by Defendants' active enforcement of the policies complained of in this action. Although Plaintiff is prohibited in his private capacity from possessing and using firearms because of Defendants' active enforcement of the policies complained of in this action, Defendants' active policies permit him to possess and use firearms in his official capacity as State Correctional Officer at the State Correctional Institution at Graterford and which Plaintiff actively does in his employment for the Pennsylvania State Department of Corrections.

9. Defendant Eric H. Holder, Jr. is sued in his capacity as the Attorney General of the United States. As Attorney General, Holder is responsible for executing and administering laws, customs, practices, and policies of the United States, and is presently enforcing the laws, customs, practices, and policies complained of in this action. Defendant Holder also has ultimate authority for supervising all the functions of the Department of Justice and of the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF"), which is an arm of the Department of Justice.

10. Defendant B. Todd Jones is sued in his capacity as the Director of the ATF. ATF is responsible for prevention of federal offenses involving the use, manufacture,

and possession of firearms, including the unconstitutionally broad ban challenged in this case. Defendant ATF also regulates, via licensing, the sale, possession, and transportation of firearms and ammunition in interstate commerce. As Director of the ATF, Jones is responsible for the executing and administering laws, customs, practices, and policies of the United States, and is presenting enforcing the laws, customs, practices, and policies complained of in this action.

11. Defendant James B. Comey is sued in his capacity as Director of the Federal Bureau of Investigation (hereinafter "FBI"). FBI is the agency primarily responsible through its National Instant Check System (hereinafter "NICS") Section for performing background checks for federal, state, and local law enforcement authorities and maintaining the NICS database reflecting that Plaintiffs are prohibited from acquiring, possessing and utilizing a firearm by the unconstitutionally broad ban complained of in this action. As Director of the FBI, Comey is responsible for the executing and administering laws, customs, practices, and policies complained of in this action.

12. Defendant United States of America is a proper defendant in this action pursuant to 5 U.S.C. § 702.

## JURISDICTION AND VENUE

13. This case concerns certain subject matter under the original and exclusive jurisdiction of the federal courts of the United States of America.

14. This action seeks relief pursuant to 28 U.S.C. §§ 1331, 1343, 1346, 2201, 2202, and 2412, and 5 U.S.C. § 702. Therefore, jurisdiction is founded on 28 U.S.C. §

1331 in that this action arises under the Constitution and laws of the United States.

15. This Court has authority to award costs and attorney fees pursuant to 28 U.S.C. § 2412 and 18 U.S.C. § 925a.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(B) and (C), as a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS RELATING TO PLAINTIFF KEYES

17. Plaintiff Keyes is:

    a.  over the age of 21;

    b.  is not under indictment;

    c.  has never been convicted of a felony or misdemeanor crime of domestic violence;

    d.  has never been convicted of a crime punishable by more than one year;

    e.  is not a fugitive from justice;

    f.  is not an unlawful user of or addicted to any controlled substance;

    g.  has not been adjudicated a mental defective;

    h.  has not been discharged from the Armed Forces under dishonorable conditions;

    i.  has never renounced his citizenship; and

    j.  is not the subject of a restraining order relating to an intimate partner.

18. Plaintiff Keyes would honorably serve our County in the U.S. Air Force, leaving active duty in 1989 with an Honorable Discharge as an Airman 1st Class and would be fully discharge from the Air Guard in 1993 as a Senior Airman.

19. Plaintiff Keyes was hired by the PSP on October 6, 1991.

20. Plaintiff Keyes is currently employed, and has been employed for the past twenty-three (23) years, with the PSP and has obtained the rank of Master Trooper.

21. On August 25, 2006, as a result of an emotionally devastating divorce, Plaintiff became depressed and was involuntarily committed as a result of imbibing in alcoholic beverages and making suicidal statements, initially pursuant to 50 P.S. § 7302, in the absence of any due process, and then later, pursuant to 50 P.S. § 7303; he was released by September 8, 2006.

22. At no point did Plaintiff Keyes ever threaten use of a firearm against himself or others.

23. As a result of his isolated involuntary commitment in 2006, Defendants contend that Plaintiff Keyes lost his private capacity firearm rights by operation of 18 Pa.C.S. § 6105(c)(4) and 18 U.S.C.§ 922(g)(4), which both prohibit an individual who has been involuntarily committed to a mental institution from being able to own, possess, use, or purchase a firearm or ammunition; however, pursuant to 18 U.S.C. § 925(a)(1), federal law includes an exception for state actors, including police officers, in their official capacity.

24. On December 3, 2008, Plaintiff Keyes filed for Restoration of his State Firearm Rights with the Perry County Court of Common Pleas, pursuant 18 Pa.C.S. § 6105(f).

25. On July 1, 2009, the Honorable Keith B. Quigley issued a Memorandum and Order "that Petitioner has in fact met his burden of showing that he may possess a firearm without risk to himself or any other person under the applicable provisions of law." A copy of Memorandum and Order are attached hereto and incorporated herein as Exhibit A.

26. As the July 1, 2009 Order only relieved Plaintiff Keyes' state firearm disability, on May 9, 2012, Plaintiff Keyes filed a request for expungement of the involuntary commitment, which was denied by the Perry County Court of Common Pleas.

27. On appeal to the Superior Court, the Superior Court held that the language "the court may grant such relief as it deems appropriate" found in 18 Pa.C.S. § 6105(f)(1) does provide the court with the power to expunge and affirmed the trial court's decision. *In re Keyes*, 83 A.3d 1016, 1022 (2013), reargument denied (Feb. 24, 2014), appeal denied, 101 A.3d 104 (Pa. 2014).

28. In September of 2011, Plaintiff Keyes had a performance evaluation conducted on his performance as a PSP Trooper. A copy of his performance evaluation is attached hereto and incorporated herein as Exhibit B.

29. Petitioner received an overall rating of "Outstanding," the highest possible rating, which he obtained in each of the six applicable categories. Id.

30. On November 14, 2011, Captain Maynard H. Gray of the PSP issued a determination reinstating Plaintiff Keyes to full, unrestricted, duty, based upon the evaluations of Petitioner's doctor, Richard W. William, Ph.D., and an independent

evaluation by the PSP's chosen doctor, Roger J. Cadieux. A copy of the determination is attached hereto and incorporated herein as Exhibit C.

31. The PSP's doctor found, "that Trooper Keyes is medically and psychiatrically cleared to perform all the duties of a full, unrestricted trooper" and the PSP's State Police Psychologist, Michael A. Asken, Ph.D., and the Department accepted these determinations. Id.

32. In his official capacity as a PSP Master Trooper, Plaintiff Keyes carries on a daily basis a Sig Sauer 227 handgun (previously a Glock 37 handgun) and when on patrol, he carries an AR-15 select-fire (fully automatic) rifle and a Remington 870 shotgun.

33. Plaintiff is currently qualified, through the PSP, with the Sig Sauer 227, Glock 37, AR-15, and Remington 870.

34. In qualifying with the AR-15, he qualified with a perfect score of 150 out of 150.

35. In qualifying with the Remington 870, he qualified with an almost perfect score of 99 out of 100.

36. In qualifying with the Glock 37, he qualified with a score of 279 out of 300.

37. In qualifying with the Sig Sauer 227, he qualified with a score of 272 out of 300.

38. As the Honorable Judge Quigley found, Plaintiff Keyes is not a risk to himself or others in possession and use of firearms and he actively possesses and utilizes firearms on a daily basis, in his official capacity as a PSP Master Trooper.

39. After the Superior Court issued its decision in *In re Keyes*, ATF Philadelphia Division Counsel Kevin White confirmed that ATF's position and policy was that Mr. Keyes remains prohibited under federal law from purchasing, possessing and

utilizing firearms in his private capacity but could continue to possess and utilize firearms in his official capacity as a PSP Master Trooper.

40. ATF Division Counsel Kevin White also confirmed that there is currently no mechanism available in Pennsylvania or under federal law for Mr. Keyes to obtain relief from his federal disability, as a result of his commitment.

41. Plaintiff Keyes is a responsible, law-abiding American citizen, who has no history of violent behavior, or of any other conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen.

42. Plaintiff Keyes does not pose any threat to himself or to society, as found by the Honorable Keith B. Quigley. *See*, Exhibit A.

43. In point of fact, Plaintiff Keyes actively possesses and utilizes a firearm in his official capacity as a PSP Master Trooper, without any history of risk or threat to himself or others.

44. Plaintiff Keyes desires and intends, in his private capacity, to purchase, possess and utilize firearms for self-defense and for defense of his family.

45. Plaintiff Keyes refrains from purchasing, possessing and utilizing firearms, in his private capacity, because he reasonably fears arrest, prosecution, incarceration and fine, under 18 U.S.C. § 922(g)(4), instigated and directed by Defendants, should he attempt to purchase, possess or utilize a firearm.

46. Plaintiff Keyes is unwilling to purchase, possess or utilize a firearm, in his private capacity, because doing so would subject him to arrest, prosecution, fine and

incarceration, at Defendants' instigation and direction, for violating 18 U.S.C. § 922(g)(4).

**STATEMENT OF FACTS RELATING TO PLAINTIFF YOX**

47. Plaintiff Yox is:

    a.   over the age of 21;

    b.   is not under indictment;

    c.   has never been convicted of a felony or misdemeanor crime of domestic violence;

    d.   has never been convicted of a crime punishable by more than one year;

    e.   is not a fugitive from justice;

    f.   is not an unlawful user of or addicted to any controlled substance;

    g.   has not been adjudicated a mental defective;

    h.   has not been discharged from the Armed Forces under dishonorable conditions;

    i.   has never renounced his citizenship; and

    j.   is not the subject of a restraining order relating to an intimate partner.

48. In 2005, when Mr. Yox was 14 years old, his parents began an emotionally devastating divorce.

49. Due to the stress of his parents' divorce, in early 2006 Plaintiff Yox encountered an older girl who introduced him to cutting and made a suicide pact with him.

50. On March 30, 2006, Plaintiff Yox was involuntarily committed for a mental health examination to York Hospital, initially pursuant to 50 P.S. § 7302, in the

absence of any due process, and then later, pursuant to 50 P.S. § 7303; he was released by April 6, 2006.

51. Thereafter, in his senior year of high school, Mr. Yox received grades of "A" and "B" and was awarded the "Student Turnaround Achievement Award."

52. In 2008, at the age of 17, Plaintiff Yox enlisted in the U.S. Army.

53. Plaintiff Yox would honorably serve our County in the U.S. Army, leaving the service in 2012 with an Honorable Discharge as a Corporal in the 82nd Airborne. A copy of his Honorable Discharge is attached hereto and incorporated herein as Exhibit D.

54. Plaintiff Yox served one year overseas, six and a half months of which was in a combat zone in Afghanistan.

55. During Plaintiff Yox's service in the Army, he was trained to use, and did use, the following weapons: M4 and M16 select fire (fully automatic) rifles, .50 Caliber Machine Gun, M240 Machine Gun, M249 Machine Gun, Mark 19 Grenade Launcher, 12 gauge shotgun, M203 Grenade Launcher, high explosives, incendiary grenades, and flashbangs.

56. Upon his return from Afghanistan, Mr. Yox was not recommended for further psychological evaluation after his deployment debriefing.

57. On or about the end of September or early October, 2012, Mr. Yox, after a Pennsylvania Instant Background Check System (PICS) search, was denied purchase of a firearm.

58. Mr. Yox appealed the denial to the Pennsylvania State Police, which informed him via letter dated October 16, 2012, that he was prohibited pursuant to 18

Pa.C.S. § 6105 and 18 U.S.C. § 922(g) from owning a firearm based on his involuntary commitment in 2006. A copy of the PSP's letter of October 16, 2012, is attached hereto and incorporated herein as Exhibit E.

59. On August 14, 2013, Plaintiff Yox filed a Petition to Vacate and Expunge his Involuntary Commitment with the Lancaster County Court of Common Pleas, after being evaluated by Psychologist Anthony Fischetto in February and March of 2013. A copy of Psychologist Fischetto's report and Addendum report are attached hereto and incorporated herein as Exhibit F.

60. Dr. Fischetto stated, "It is this psychologist's opinion within a reasonable degree of psychological certainty, based on the finding this psychologist's 23 page report dated 03-17-2013, that Mr. Yox does not appear to pose a threat to himself or others in possession of a firearm." Id.

61. Unfortunately, the Superior Court issued its decision in *In Re Keyes*, two weeks prior to the hearing on his Petition.

62. On May 5, 2014, after explaining that he was bound by the Superior Court's decision in *In re: Keyes* and therefore prohibited from granting expungement, the Honorable Jay Hoberg issued an order granting Plaintiff Yox state relief from any disability imposed pursuant to 18 Pa.C.S. § 6105. A copy of the Order and Amended Memorandum are attached hereto and incorporated herein as Exhibit G.

63. In granting state relief, Judge Hoberg found, "The Petition no longer suffers from the mental health condition that was the basis for his commitments" and "The Petitioner may safely possess a firearm without risk to himself or any other person." Id.

64. After receipt and review of Judge Hoberg's Order of May 5, 2014, ATF Philadelphia Division Counsel Kevin White confirmed that ATF's position and policy was that Mr. Yox remains prohibited under federal law from purchasing, possessing and utilizing firearms in his private capacity, even though he was committed as a juvenile, but could continue to possess and utilize firearms in his official capacity as a State Correctional Officer for the Pennsylvania Department of Corrections.

65. ATF Division Counsel Kevin White also confirmed that there is currently no mechanism available in Pennsylvania or under federal law for Mr. Yox to obtain relief from his federal disability, as a result of his commitment.

66. Plaintiff Yox is a responsible, law-abiding American citizen, who has no history of violent behavior, or of any other conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen.

67. Plaintiff Yox does not pose any threat to himself or to society, as found by the Honorable Jay Hoberg. *See*, Exhibit G.

68. In point of fact, Plaintiff Yox actively possesses and utilizes a firearm in his official capacity as a State Correctional Officer, without any history of risk or threat to himself or others.

69. Plaintiff Yox desires and intends, in his private capacity, to purchase, possess and utilize firearms for self-defense and for defense of his family.

70. Plaintiff Yox refrains from purchasing, possessing and utilizing firearms, in his private capacity, because he reasonably fears arrest, prosecution, incarceration

and fine, under 18 U.S.C. § 922(g)(4), instigated and directed by Defendants, should he attempt to purchase, possess or utilize a firearm.

71. Plaintiff Yox is unwilling to purchase, possess or utilize a firearm, in his private capacity, because doing so would subject him to arrest, prosecution, fine and incarceration, at Defendants' instigation and direction, for violating 18 U.S.C. § 922(g)(4).

## STATUTES AND REGULATIONS

72. 18 U.S.C. § 922(g) provides the following:

> (g) It shall be unlawful for any person –
> …
> (4) who has been adjudicated as a mental defective or who has been committed to a mental institution;
> …
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

73. Although 18 U.S.C. § 922(g) does not specify that it applies to juveniles and 18 U.S.C. § 922(x) addresses firearms disabilities specific to juveniles, the ATF's current policy is to declare juvenile involuntary commitments prohibiting, even though it is currently involved in Rulemaking, ATF-51P - RIN 1140-AA47, wherein it specifically solicited public comments for purposes of enacting a new regulation on, "whether the term 'committed to a mental institution' includes a commitment that occurred when the person was under the age of 18." Fed. Reg. Vol. 79, No. 4, 775.

74. 18 U.S.C. § 925(a) provides an exception to the firearms disability of Section 922(g)(4), where the individual is benefitting, in his/her official capacity, the U.S. or state government: [1]

> The provisions of this chapter, except for sections 922(d)(9) and 922(g)(9) and provisions relating to firearms subject to the prohibitions of section 922(p), shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

75. Further, under 18 U.S.C. § 925(c), an individual prohibited from acquiring a firearm may apply to the Attorney General for relief from the prohibition, which the Attorney General may grant if "the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest."

76. The ATF has promulgated a rule detailing the manner that a review under 18 U.S.C. § 925(c) may be sought. 27 C.F.R. § 478.144.

77. However, notwithstanding the provisions of 18 U.S.C. § 925(c) and 27 C.F.R.§ 478.144 (2011), which purport to provide a means to request relief for an individual prohibited from acquiring a firearm, the United States Congress has specifically denied any funding "to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. 925(c)." The Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113–235, 128 Stat. 2130.

---

[1] Both Plaintiff Keyes and Plaintiff Yox fall under this exception, when in their official capacity as a PSP Master Trooper and State Correctional Officer, respectively.

78. Due to the above lack of funding, ATF does not in fact provide any review under 18 U.S.C. § 925(c) to provide relief from a federal prohibition on purchasing, possessing or utilizing a firearm.

79. Because Defendant ATF does not provide a review for relief from a federal prohibition on acquiring or possessing a firearm, Plaintiffs cannot avail themselves of any federal procedure to vindicate their Second Amendment rights on the grounds that they do not present a threat to themselves or others.

80. Under the NICS Improvement Amendments Act of 2007 (NIAA), Congress provided an alternate route for relief from a federal prohibition on acquiring a firearm in which the various states may elect to provide an ATF-approved program to review, approve, or deny applications for such relief. NICS Improvement Amendments Act of 2007, Pub. L. 110-180, 121 Stat. 2559, 2569-70.

81. To date, the Commonwealth of Pennsylvania has failed to institute such an ATF-approved program, and Plaintiffs cannot therefore avail themselves of any state or federal procedure providing relief from a federal prohibition on purchasing, possessing or utilizing a firearm in their private capacity.

82. ATF Division Counsel Kevin White confirmed that there is currently no mechanism available in Pennsylvania or under federal law for Mr. Keyes or Mr. Yox to obtain relief from their federal disabilities, resulting of their commitments.

## COUNT I: SECOND AMENDMENT AS-APPLIED VIOLATIONS
### (*Plaintiffs v. All Defendants*)

83. The foregoing paragraphs are incorporated herein as if set forth in full.

84. Defendants Eric Holder, B. Todd Jones, James B. Comey and the United States of America have, together and separately, violated Plaintiffs' Second Amendment rights.

85. Defendants contend that 18 U.S.C. § 922(g)(4) prohibits any individual who has ever been involuntarily committed – without regard to the reason for the commitment or the present circumstances of the individual – from purchasing, possessing and utilizing a firearm.

86. Notwithstanding the NIAA, no state relief from the federal prohibition under 18 U.S.C. § 922(g)(4) exists in Pennsylvania due to Pennsylvania's failure to provide for a procedure for such relief.

87. These federal laws and policies prohibiting Plaintiffs from purchasing, possessing and utilizing a firearm, in their private capacity, and providing for no review of the prohibition because of a lack of federal funding and reliance upon a nonexistent state program constitutes an over-broad infringement and an impermissible burden on Plaintiffs' right to keep and bear arms under the Second Amendment to the United States Constitution.

88. This over-broad restriction has already been found to violate the Second Amendment by the 6th Circuit Court of Appeals in *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 775 F.3d 308 (6th Cir. 2014).

89. As a direct and proximate result of the above infringement and impermissible burden on Plaintiffs' Second Amendment rights, Plaintiffs have suffered and continue to suffer from an unlawful deprivation of their fundamental constitutional right to keep and bear arms.

90. Plaintiffs have incurred attorney's fees and costs as a direct result of prosecuting the present court action.


## COUNT II: SECOND AMENDMENT AS APPLIED VIOLATIONS
### (*Yox v. All Defendants*)

91. The foregoing paragraphs are incorporated herein as if set forth in full.

92. Defendants Eric Holder, B. Todd Jones, James B. Comey and the United States of America have, together and separately, violated Plaintiff Yox's Second Amendment rights by denying him the ability to purchase, possess and utilize a firearm as a result of a juvenile commitment.

93. 18 U.S.C. § 922(g)(4) prohibits an *adult* individual who has ever been involuntarily committed from purchasing, possessing and utilizing a firearm.

94. Neither 18 U.S.C. § 922(g) nor 18 U.S.C. § 922(x) prohibit an individual, who was involuntarily committed as a juvenile, from purchasing, possessing and utilizing a firearm.

95. The Defendants' custom, practice, and policy of prohibiting an individual as a result of a juvenile involuntary commitment is an infringement and an impermissible burden on Plaintiff Yox's right to keep and bear arms under the Second Amendment to the United States Constitution.

96. As a direct and proximate result of the above infringement and impermissible burden on Plaintiff Yox's Second Amendment rights, Plaintiff has suffered and continues to suffer from an unlawful deprivation of his fundamental constitutional right to keep and bear arms.

97. Plaintiff Yox has incurred attorney's fees and costs as a direct result of prosecuting the present court action.

## COUNT III: FIFTH AMENDMENT DUE PROCESS AS-APPLIED VIOLATIONS
### (*Plaintiffs v. All Defendants*)

98. The foregoing paragraphs are incorporated herein as if set forth in full.

99. Defendants Eric Holder, B. Todd Jones, James B. Comey and the United States of America have, together and separately, violated Plaintiffs' Fifth Amendment right to due process by denying them the ability to purchase, possess and utilize a firearm, as a result of an involuntary commitment, when Pennsylvania's Mental Health and Procedure Act (hereinafter, "MHPA") lacks any standard for a commitment, in violation of the U.S. Supreme Court's holding in *Addington v. Texas*, 441 U.S. 418 (1979), and when they are not afforded notice and an opportunity to be heard on the matter prior to the deprivation and/or through a post-deprivation proceeding to seek review and relief from the deprivation.

100.    Pennsylvania's MHPA is found at 50 P.S. § 7101, et seq.

101.    Nowhere within the MHPA has the Pennsylvania General Assembly set-forth a standard for a civil commitment, as required by the U.S. Supreme Court in *Addington*.

102.    The US Supreme Court declared, "To meet due process demands, the standard has to inform the factfinder that the proof must be greater than the preponderance-of-the-evidence standard applicable to other categories of civil cases." *Addington v. Texas*, 441 U.S. 418, 432-33 (1979).

103.     In the absence of individuals being provided the due process necessary

under the U.S. Constitution, Defendants' custom, practice, and policy of

prohibiting an individual as a result of a Pennsylvania involuntary commitment is

an infringement and an impermissible burden on Plaintiffs' due process rights

under the Fifth Amendment to the United States Constitution.

104.     In violation of the Plaintiffs' right to due process, Plaintiffs have been

deprived of their Second Amendment right to keep and bear firearms without

being afforded notice and an opportunity to be heard on the matter prior to the

deprivation and/or through a post-deprivation proceeding to seek review and relief

from the deprivation.

105.     As a direct and proximate result of the above infringement and

impermissible burden on Plaintiffs' Fifth Amendment rights, Plaintiffs' have

suffered and continue to suffer from an unlawful deprivation of their fundamental

constitutional rights to due process and to keep and bear arms.

106.     Plaintiffs' have incurred attorney's fees and costs as a direct result of

prosecuting the present court action.


### COUNT IV: FIFTH AMENDMENT EQUAL PROTECTION AS-APPLIED VIOLATIONS
#### (*Plaintiffs v. All Defendants*)

107.     The foregoing paragraphs are incorporated herein as if set forth in full.

108.     Defendants Eric Holder, B. Todd Jones, James B. Comey and the United

States of America have, together and separately, violated Plaintiffs' Fifth

Amendment right to equal protection by denying them the ability to purchase,

possess and utilize a firearm, in their private capacity, as a result of an involuntary commitment, while permitting them to possess and use firearms in their official capacity, while benefitting the U.S. or state government.

109.    In violation of the Plaintiffs' right to equal protection under the Equal Protection Clause of the Fifth Amendment, Plaintiffs' have been deprived of their right to keep and bear firearms in their private capacity, while being permitted to possess and utilize firearms in their official capacity, when benefiting the U.S. or state government.

110.    As a direct and proximate result of the above infringement and impermissible burden on Plaintiffs' Fifth Amendment rights, Plaintiffs' have suffered and continue to suffer from an unlawful deprivation of their fundamental constitutional rights to equal protection and to keep and bear arms.

111.    Plaintiffs' have incurred attorney's fees and costs as a direct result of prosecuting the present court action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and against Defendants, as follows:

a)    Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures violate Plaintiffs' right to keep and bear arms as secured by the Second Amendment to the United States Constitution.

b) Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures do not apply to Plaintiff Yox's juvenile involuntary commitment.

c) Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures violate Plaintiffs' right to due process under the Due Process Clause of the Fifth Amendment to the United States Constitution, as Pennsylvania's MHPA lacks any standard for a commitment.

d) Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures violate Plaintiffs' right to due process under the Due Process Clause of the Fifth Amendment to the United States Constitution, as Plaintiffs' were not afforded notice and an opportunity to be heard on the matter prior to the deprivation and/or through a post-deprivation proceeding to seek review and relief from the deprivation.

e) Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures violate Plaintiffs' right to equal protection under the Equal Protection Clause of the Fifth Amendment to the United States Constitution, as Plaintiffs' are treated differently merely based on whether they are acting within their official or private capacity.

f) Permanently enjoin the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing against Plaintiffs 18 U.S.C. § 922(g)(4) and all its derivative regulations, and all related laws, policies, and procedures that would impede or criminalize Plaintiffs' exercise of their right to keep and bear arms.

g)   Permanently enjoin the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing 18 U.S.C. § 922(g)(4) in relation to Plaintiff Yox's juvenile involuntary commitment.

h)   Permanently enjoin the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing 18 U.S.C. § 922(g)(4) against Plaintiffs in relation to their Pennsylvania involuntary commitments, as Pennsylvania's MHPA lacks the requisite standard as declared by the U.S. Supreme Court's holding in *Addington*.

i)   Award Plaintiffs' costs and attorney's fees and expenses to the extent permitted under 28 U.S.C. § 2412 and 18 U.S.C. § 925a.

j)   Any and all other equitable and/or legal remedies this Court may see fit.

Respectfully Submitted,

Joshua Prince, Esq.
Attorney ID No. 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
610-845-3803 ext. 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com