# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL L. KEYES**, *et al.*, | : | |
| Plaintiffs, | : | **Civil No. 1:15-CV-457** |
| **v.** | : | |
| | : | |
| **LORETTA E. LYNCH**, | : | **Hon. John E. Jones III** |
| Attorney General of the | : | |
| United States, *et al.*, | : | |
| Defendants | : | |

## PLAINTIFFS' COMBINED REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Dated: March 3, 2016

Respectfully Submitted,

Joshua Prince, Esq.
Attorney Id. No. 306521
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA 19505
610-845-3803 ext 81114
610-845-3903      (fax)
Joshua@PrinceLaw.com

Attorney for Plaintiffs

# Table of Content

I.   COUNTER STATEMENT OF FACTS .................................................. 1

II.  COUNTER STATEMENT OF QUESTIONS INVOLVED .............. 1

III. ARGUMENT ......................................................................................... 1

   A. *Plaintiffs are entitled to judgment under the NICS Improvement Amendments Act of 2007 ("NIAA")* ...................................................... 1

      1. Defendants Concede That ATF's Approval Of A State Relief Program Is Not Required ...................................................................... 2

      2. Pennsylvania's Relief Program Fits The NIAA Criteria And ATF Has Approved Other Similar Programs ...................................... 3

      3. Section 101(c)(1) Does Apply ........................................................... 5

   B. *Plaintiffs are entitled to judgment on Count I because 18 U.S.C. § 922(g)(4) is inconsistent with the Second Amendment, as applied* ................................................................................................... 7

      1. Plaintiffs' Second Amendment Claims Involve Conduct That Falls Within the Scope of the Second Amendment's Protection ................................................................................. 10

      2. Level of Scrutiny To Be Applied ............................................... 14

      3. Second Amendment As-Applied Analysis .............................. 15

   C. *Plaintiff Yox is entitled to judgment on Count II as juvenile commitments are not included within 922(g)(4)* .............................. 18

   D. *Defendants are not entitled to judgment on Count III (due process) as Plaintiffs have shown a valid Second Amendment challenge* ........................................................................................... 24

IV. CONCLUSION .............................................................................. 27

# Table of Authorities

## Cases

*Addington v. Texas*, 441 U.S. 418 (1979) ...................................................... 24

*Bailey v. Alabama*, 219 U.S. 219 (1911) ....................................................... 12

*Bell v. United States*, 574 F. App'x 59 (3rd Cir. 2014) ................................. 25

*Bell v. United States*, No. 13-5533, 2013 U.S. Dist. LEXIS 152791
(E.D. Pa. Oct. 24, 2013) ............................................................................ 25

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) .................. 15

*Commissioner v. Sunnen*, 333 U.S. 591 (1948) .............................................. 7

*Coors Brewing Co. v. Mendez-Torres*, 562 F.3d 3 (1st Cir. 2009) ............... 7

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................... passim

*Edenfield v. Fane*, 507 U.S. 761 (1993) ....................................................... 17

*Global NAPs, Inc. v. Mass. Dep't of Telcoms. & Energy*, 427 F.3d 34
(1st Cir. 2005) ............................................................................................. 7

*Gonzales v. Carhart*, 550 U.S. 124 (2007) .................................................. 11

*Horton v. City of Harrisburg*, 2009 U.S. Dist. LEXIS 63428 (M.D.
Pa. 2009) .................................................................................................... 3

*Horton v. City of Harrisburg*, 2009 U.S. Dist. LEXIS 76551 (M.D.
Pa. 2009) ................................................................................................. 3, 6

*In re E.C.*, 2015 N.J. Super. Unpub. LEXIS 1637 (July 8, 2015) ................. 3

*In re Hancock*, 719 A.2d 1053 (Pa. Super. Ct. 1998) .................................. 24

*In re Keyes*, 83 A.3d 1016 (Pa. Super. 2013) ................................................ 7

*Kolbe v. Hogan*, No. 14-1945, 2016 U.S. App. LEXIS 1883 (4th Cir.
Feb. 4, 2016) ............................................................................................. 14

*Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) ................................. 7

*McDonald v. City of Chicago,* 561 U.S. 742 (2010) ................................ 9, 14

*Mudric v. Attorney Gen. of U.S.*, 469 F.3d 94 (3d Cir. 2006) ..................... 25

*O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062 (3d Cir.1991) ................... 7

*Pub. Interest Research Grp. v. Magnesium Elektron, Inc.*, 123 F.3d

111 (3d Cir. 1997) ............................................................... 7

*Reid-Douglas v. Harding*, No. 1:10-CV-2049, 2014 U.S. Dist. LEXIS 94956 (M.D. Pa. July 14, 2014) ............................................ 7

*Stimmel v. Lynch*, 2015 U.S. Dist. LEXIS 130312 (Oh.N.D. Sept. 28, 2015) ......................................................................................... 2

*Suarez v. Holder, et al.*, 1:14-CV-968, 2015 U.S. Dist. LEXIS 19378 (M.D. Pa. Feb. 18, 2015) .......................................... 9, 15, 16, 17

*U.S. v. Barton*, 633 F.3d 168 (3d Cir. 2011) ...................... 9, 12, 16

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ................... passim

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) ..................... 15

*United States v. Moore*, 666 F.3d 313 (4th Cir. 2012) ................................ 12

*United States v. Torres-Rosario*, 658 F.3d 110 (1st Cir. 2011) ................... 12

*United States v. Williams*, 616 F.3d 685 (7th Cir. 2010) ............................ 12

*Vlandis v. Kline*, 412 U.S. 441 (1973) ......................................................... 12

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .................................. 17

**Statutes**

18 Pa.C.S. § 106(b) ................................................................... 23

18 Pa.C.S. § 6105(f) ..................................................................... 5

18 U.S.C. §  921(a)(20) ............................................................. 23

18 U.S.C. § 4101 ........................................................................ 19

18 U.S.C. § 922(d)(9) ................................................................ 18

18 U.S.C. § 922(g)(1) ........................................................... 16, 23

18 U.S.C. § 922(g)(9) ................................................................ 18

18 U.S.C. § 922(x) ..................................................................... 19

18 U.S.C. § 925(a)(1) ........................................................... 13, 26

18 U.S.C. § 925A ......................................................................... 2

35 P.S. § 10101.1(b)(1) ............................................................. 21

50 P.S. § 7303 ............................................................................ 27

Firearms Owners' Protection Act ("FOPA"), Pub. L. No. 99-308, 100

Stat. 449 (1986) ..................................................................... 26

OR. OAR 859-300-0090 .......................................................... 4

Wis. Stat. § 941.29 .................................................................. 4

## Other Authorities

106 Cong. Rec. 22,535 (1999) ................................................ 21

Carlton F.W. Larson, Four Exceptions in Search of A Theory: District
   of Columbia v. Heller and Judicial Ipse Dixit, 60 Hastings L.J.
   1371, 1376 (2009) ............................................................ 10

## Rules

Fed.R.C.P. 8 ...................................................................... 4, 5

## Treatises

Restatement (Second) of Judgments § 28 (1982) ......................... 7

## Regulations

55 Pa. Code § 5100.84 ........................................................... 22

# I.       COUNTER STATEMENT OF FACTS

Consistent with the permission granted by the Court in its Order of February 23, 2016 (Doc. 40), Plaintiffs incorporate by reference their statement of facts specified in their Brief in Support of Their Motion For Summary Judgment (Doc. 29, pgs. 3-12), as their counter statement of facts.

# II.      COUNTER STATEMENT OF QUESTIONS INVOLVED

Consistent with the permission granted by the Court in its Order of February 23, 2016 (Doc. 40), Plaintiffs incorporate by reference their statement of questions specified in their Brief in Support of Their Motion For Summary Judgment (Doc. 29, pgs. 12-13), as their counter statement of questions involved.

# III.     ARGUMENT [1]

A.     *Plaintiffs are entitled to judgment under the NICS Improvement Amendments Act of 2007 ("NIAA")*

As Plaintiffs discussed in their Brief in Support of Their Motion for Summary Judgment (Doc. 29), Section V., B., pgs. 14-26, which Plaintiffs

---

[1] Consistent with the permission granted by the Court in its Order of February 23, 2016 (Doc. 40), Plaintiffs incorporate by reference, where appropriate, their arguments specified in their Brief in Support of Their Motion For Summary Judgment (Doc. 29).

[2] Plaintiffs note in response to Defendants' fn. 16 that in *Stimmel v. Lynch*,

incorporate by reference herein, they are entitled to judgment in their favor as the relief they obtained from the state courts relieved them of any federal disability, pursuant to Sections 101 and 105 of the NICS Improvement Amendments Act of 2007, Pub. L. 110-180, 121 Stat. 2559 ("NIAA").[2] Plaintiffs agree with Defendants that pursuant to the principle of constitutional avoidance, the Court should first resolve this matter. (Doc. 34, fn. 17).

1.    Defendants Concede That ATF's Approval Of A State Relief Program Is Not Required

Although Defendants throughout the main body of their brief discuss NIAA Section 103's requirement that the Attorney General approve a state relief program in order for the state to be eligible for "grants," tucked into fn. 18, they acknowledge that under Section 105, "NIAA does not require such approval." (Doc. 34, pg 49, fn. 18). Accordingly, the Defendants have conceded that a state is not required to obtain approval of its program,

_____

[2] Plaintiffs note in response to Defendants' fn. 16 that in *Stimmel v. Lynch*, 2015 U.S. Dist. LEXIS 130312, at *21 (Oh.N.D. Sept. 28, 2015), the district court acknowledged that NIAA "afford[s] access to the courts." Additionally, as Defendants acknowledge, 5 U.S.C. § 706 authorizes review of agency action "unlawfully withheld" or "not in accordance with the law." (Doc. 34, fn. 16). Moreover, 18 U.S.C. § 925A specifically permits a person who is erroneously denied a firearm to bring an action for relief, including "an order directing that the erroneous information be corrected."

pursuant to Section 105, in order for the program to be valid and provide federal relief.[3]

2. Pennsylvania's Relief Program Fits The NIAA Criteria And ATF Has Approved Other Similar Programs

As Plaintiffs discussed in their Brief in Support of Their Motion for Summary Judgment (Doc. 29), Section V., B., Pennsylvania's relief program meets the NIAA criteria, especially when reviewed in comparison to other state relief programs, which ATF has held meet the NIAA criteria. Although the Defendants contend that "Pennsylvania's statutory scheme does not satisfy the criteria required by NIAA" (Doc. 34 at 47), their argument is devoid of any response to Plaintiffs' argument that ATF has approved other almost identical state relief programs, as meeting the NIAA criteria (Doc. 29, pgs. 18-21).[4]

---

[3] Consistent with Plaintiffs' arguments, the New Jersey Superior Court in *In re E.C.*, 2015 N.J. Super. Unpub. LEXIS 1637, at *17, 23 (July 8, 2015) found that although ATF had not approved New Jersey's relief program, it was sufficient to meet the requirements of NIAA.

[4] Accordingly, Defendants should be deemed to have waived any argument contrary thereto, consistent with this Court's holding in *Horton v. City of Harrisburg,* 2009 U.S. Dist. LEXIS 76551, *17 (M.D. Pa. 2009)(holding that failure to respond to an argument in a brief in opposition constitutes waiver)(*rejected in part on other grounds* by *Horton v. City of Harrisburg*, 2009 U.S. Dist. LEXIS 63428 (M.D. Pa. 2009)).

Nevertheless, as Plaintiffs previously addressed, Wisconsin's relief program, which ATF has approved, only requires that it be "determine[d] that the person is not likely to act in a manner dangerous to public safety." Wis. Stat. § 941.29(8).[5] This language, while not identical, is substantially similar to Pennsylvania's relief program, which declares that a court may grant relief if the court "determines that the applicant may possess a firearm without risk to the applicant or any other person."

Accordingly, Plaintiffs are entitled to declaratory and injunctive relief that Pennsylvania's state relief program does meet the NIAA criteria,[6] especially in light of Defendants' approval of Wisconsin's and Oregon's

---

[5] This language is also substantially similar to Oregon's relief program, which Plaintiffs previously discussed (Doc. 29, pgs. 20-21), which only requires "the petitioner [to] demonstrate[] that he or she will not be likely to act in a manner that is dangerous to public safety and that granting the relief would not be contrary to the public interest." *See* OR. OAR 859-300-0090(1)

[6] Although Defendants contend that since Plaintiffs did not bring a claim under the Full Faith and Credit Clause of the Constitution, the case law cited to by Plaintiffs relating to federalism and comity is not relevant (Doc. 34, fn. 19), Defendants appear to overlook the fact that the Complaint was amended with their consent to include a count under NIAA and that under the framework of NIAA, there are several reasons why Plaintiffs are entitled to relief, including federalism and comity, which suggest that the federal government should adhere to state determinations, regardless of strict compliance with NIAA. This is further buttressed by ATF's approval of other substantially similar programs, which could be argued to not meet the strict requirements of NIAA, absent review of their actual application and process. *See also*, Fed.R.C.P. 8 (only requiring notice pleading).

state relief programs, as meeting the NIAA criteria.[7]

3.     Section 101(c)(1) Does Apply

Although Defendants assert that Plaintiffs waived any argument under

Section 101 of NIAA because they allegedly failed to raise it in their

Complaint (Doc. 34 at 52), Plaintiffs raised all of NIAA in their Amended

Complaint (Doc. 24, ¶¶ 80, 112-13) and are not required to specify every

section and sub-section therein,[8] just as a party is not required in a complaint

to cite any or every case applicable to the underlying action. Furthermore, as

Defendants acknowledge (Doc. 34, pg. 52), Plaintiffs specifically addressed

Section 101 in their Motion for Summary Judgment.

It is important to note that the Defendants do not contest Plaintiffs'

arguments that Pennsylvania's relief program found in 18 Pa.C.S. § 6105(f)

and the Court Orders issued in this matter meet the Section 101(c)(1)

---

[7] Although the Defendants contend that Pennsylvania's scheme "fails to specify the factors the State court must consider in rendering its determination, much less the evidence on which the Court should base its findings" (Doc. 34, at 50), neither Wisconsin's nor Oregon's state relief programs, which ATF has approved, specify the factors that the state court must consider in rendering its determination or the evidence upon which the court should base its findings. Thus, Defendants concede, based on their own prior determinations, that a statutory scheme is not required to specify the factors considered or the evidence upon which the court relies in order for relief to be triggered under Section 105.

[8] Fed.R.C.P. 8 only requires notice pleading, not code pleading.

requirements (Doc. 29, pgs. 17, 25-26 and fn. 16; Exhibit D; Exhibit I).[9]

Rather, in an attempt to confuse the issue, Defendants argue that since Pennsylvania provides the mental health record to the FBI, no federal agency has provided it to the Attorney General. (Doc. 34, pgs. 52-53). Yet, this argument defies all commonsense, as there is no dispute that the FBI is a "department or agency of the Federal Government," under the control of the Attorney General and Department of Justice, and that upon receipt of the mental health record from Pennsylvania, FBI is providing it to the Attorney General by adding the record to the National Instant Check System ("NICS"). *See*, Exhibits K, L. To interpret Section 101(c) consistent with Defendants' argument would eviscerate the entire purpose of Section 101(c) and render it meaningless, as there would never be an occasion where it would apply, since FBI is the agency to receive such a notification and add it to the NICS database.

As both Plaintiffs have obtained state relief reflecting that they have been fully released or discharged from all mandatory treatment, supervision, or monitoring and no longer suffer from the mental health condition that was the basis for the commitment, they are entitled to declaratory and injunctive relief that Defendants must remove any contrary indication from the NICS

---

[9] Accordingly, consistent with *Horton*, *supra*, fn 1., Defendants should be deemed to have waived any argument contrary thereto.

database.

B. *Plaintiffs are entitled to judgment on Count I because 18 U.S.C. § 922(g)(4) is inconsistent with the Second Amendment, as applied*

Plaintiffs[10] contend that as-applied to them in their private capacity, 18

---

[10] While Plaintiff Keyes has consistently acknowledged that this Court dismissed his Second Amendment as-applied challenge, to the extent this Court decides to reconsider, *sua sponte*, its decision dismissing his claims, he also argues in support of this analysis. Plaintiff Keyes respectfully avers that in the event that the Court were to grant Plaintiff Yox's Second Amendment as-applied challenge, such would draw into question the Pennsylvania Superior Court's decision in *In re Keyes*, 83 A.3d 1016 (Pa. Super. 2013), and would constitute the existence of extraordinary circumstances and new law that would warrant departure from the law of the case doctrine. *Reid-Douglas v. Harding*, No. 1:10-CV-2049, 2014 U.S. Dist. LEXIS 94956, at *27 (M.D. Pa. July 14, 2014) (*quoting, Pub. Interest Research Grp. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)).
    *See also, Coors Brewing Co. v. Mendez-Torres*, 562 F.3d 3 (1st Cir. 2009))(*abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010))(holding that "issue preclusion 'may be defeated by showing ... that there has been a substantial change in the legal climate suggesting a new understanding of the governing legal rules that may require a different application.'"(*citing, Global NAPs, Inc. v. Mass. Dep't of Telcoms. & Energy*, 427 F.3d 34, 45 (1st Cir. 2005) (*quoting* 18 Federal Practice § 4425); *see also, Commissioner v. Sunnen*, 333 U.S. 591, 600 (1948)(declaring that "a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable."). This understanding is supported by the Restatement (Second) of Judgments § 28(2) (1982), which explains that re-litigation of an issue in a subsequent action is permitted where "[t]he issue is one of law" and "a new determination is warranted in order to take account of an intervening change in the applicable legal context."; however, *see also, O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1069 (3d Cir.1991)(*citing* the above Restatement section, but concluding it was inapplicable where a

U.S.C. § 922(g)(4)'s blanket, all-encompassing and perpetual prohibition, as a result of a single, isolated involuntary commitment violates their Second Amendment Rights, especially in light of judicial determinations that they do not pose a risk to themselves or others in possession of a firearm and when they have both possessed numerous firearms, including fully automatic firearms, in their official capacities, post-involuntary commitment without issue. In this vein, as Plaintiffs discussed in their Brief in Support of Their Motion for Summary Judgment (Doc. 29), Sections V., C., D., and E., pgs. 26-40, which Plaintiffs incorporate by reference herein, they are entitled to judgment in their favor.

While Defendants contend that the Court should employ a balancing test as enumerated by the Third Circuit in *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010), they fail to address the U.S. Supreme Court's direction in *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008) [11]

---

plaintiff sought to re-litigate the same dispute regarding the same transaction, *i.e.* the same claim).

[11] Declaring that "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon."

and *McDonald v. City of Chicago,* 561 U.S. 742, 780, 790-91 (2010) [12] that

lower courts should *not* conduct interest balancing or apply levels of

scrutiny, which Plaintiffs' raised in their brief, at 27 & fn. 20. Accordingly,

Plaintiffs argue, based on the Supreme Court's direction, that it is improper

to conduct an interest balancing analysis or apply levels of scrutiny.

Furthermore, as Plaintiffs previously stated (Doc. 29, pgs. 30-31 & fn. 19),

the Third Circuit in *U.S. v. Barton*, 633 F.3d 168, 170-171, 173 (3d Cir.

2011) has seemingly held that different analyses exist for facial and as-

applied challenges. Although Plaintiffs have only brought an as-applied

challenge, the different analyses were reviewed for the benefit of the Court;

however, Plaintiffs contend that if any analysis should be employed, it

should be consistent with *Barton* and this Court's holding in *Suarez*, as

discussed *infra*.

Nevertheless, as Plaintiffs explained in their Brief in Support of Their

Motion for Summary Judgment (Doc. 29), Sections V., C., D., and E., pgs.

26-40, even under the *Marzzarella* interest balancing test, they are entitled to

judgment in their favor.

---

[12] Declaring that the *Heller* Court "specifically rejected … an interest-balancing test" and warning that the right to keep and bear arms may not be "treat[ed] . . . as a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees"

1.   Plaintiffs' Second Amendment Claims Involve Conduct
     That Falls Within the Scope of the Second Amendment's
     Protection

As Plaintiffs discussed at length in their Brief in Support of Their

Motion for Summary Judgment, Section V., C., 2., a., (Doc. 29 pgs. 27-29),

if one reviews 18 U.S.C. § 922(g)(4)'s prohibition in the historical context of

when the Second Amendment was ratified, as Professor Larson declares,

"[o]ne searches in vain through eighteenth-century records to find *any* laws

specifically excluding the mentally ill from firearms ownership." [13]

Furthermore, contrary to Defendants' assertion that the Seventh

Circuit in *U.S. v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010) found that

those with "a history of mental disturbance" were not historically included

as "virtuous citizens" (Doc. 34, pg. 17), the court only declared that felons

were not "virtuous citizens" at the time of the founding. Moreover, and

consistent with Plaintiffs' argument that the mentally ill were not historically

prohibited, the court declared, "Federal law did not prohibit firearm

possession by those adjudicated mentally ill or committed to a mental

institution until 1968." *Id.* at 685. It is important to note that Defendants

---

[13] Carlton F.W. Larson, Four Exceptions in Search of A Theory: *District of
Columbia v. Heller* and Judicial Ipse Dixit, 60 Hastings L.J. 1371, 1376
(2009)(emphasis added).

concede that no such laws existed historically and consistent with Plaintiffs' arguments in fn. 14, *infra*, contend that those individuals with mental issues would *only* be disarmed while "lock[ed] up." (Doc. 34, pg. 18).

While Defendants argue that based on the *Heller* Court's statement that the "Second Amendment is not unlimited" and that "nothing in [its] opinion should be taken to cast doubt" on the "presumptively lawful regulatory measures" (*Heller*, 554 U.S. at 626-27, & fn. 26), they overlook the crucial word "presumptively" and simply dismiss Plaintiffs' argument that the Court specifically utilized the phrase "*the* mentally ill" to reflect the present tense. [14] (Doc. 29, at 34-35).

First, consistent with the U.S. Supreme Court's declaration in *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) that "[a]s-applied challenges are the basic building blocks of constitutional adjudication," the Court's statement of certain laws being presumptively lawful, specifically left open

---

[14] Defendants state that Plaintiffs failed to "to identify which 'longstanding prohibition[] on the possession of firearms by … the mentally ill' *Heller* could have been referring to, if Section 922(g)(4) were not the intended referent (Doc. 34, at 37); however, as Plaintiffs did explain, *Heller* was referring to those who are *currently* mentally ill. For example, Plaintiffs believe that the Court was referencing those individuals who are currently in a mental institution or those who had been permanently adjudicated incompetent, neither of which apply to Plaintiffs in this matter.

Also, it bears noting that Defendants throughout their arguments seemingly analyze Plaintiffs' constitutional challenges as facial, when, in fact, they are as-applied.

the ability to challenge the constitutionality of such laws and regulations in as-applied challenges.[15] *See also*, *Williams*, 616 F.3d at 692 (declaring that, "*Heller* referred to felon disarmament bans only as 'presumptively lawful,' which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an asapplied [sic] challenge."); *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 803 fn.22 (1984)("The fact that [a law] is capable of valid applications does not necessarily mean that it is valid as applied to these litigants.").

Second, as the *Heller* Court did not have before it a question regarding the validity of a mental health commitment nor the benefit of such an issue being fully briefed, including the historical context of such a prohibition, the Court utilized the word "presumptively" because it was not deciding the issue. Rather, the Court was merely signaling that it would presume such was valid, until a proper challenge, whether facial or as-

---

[15] Four circuits have correctly held – consistent with *Heller* – that the listed "regulatory measures" are simply "presumptively lawful," meaning that they are subject to as-applied challenges. *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *United States v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011); *United States v. Torres-Rosario*, 658 F.3d 110, 112-13 (1st Cir. 2011); *United States v. Moore*, 666 F.3d 313, 319-20 (4th Cir. 2012).
    *See also*, *Bailey v. Alabama*, 219 U.S. 219, 239 (1911) ("The power to create presumptions is not a means of escape from constitutional restrictions."); *Vlandis v. Kline*, 412 U.S. 441, 446 (1973) (irrebuttable presumptions are disfavored).

applied, was brought and the federal courts had opportunity to vet the historical context of the prohibition and whether such a prohibition was constitutional. This is supported by the Court's declaration that "there will be time enough to expound upon the historical justifications for the exceptions we have mentioned *if and when those exceptions come before us*." *Heller,* 554 U.S. at 635 (emphasis added). The italicized language would not have been necessary if the Court had itself in *Heller* determined that prohibitions and restrictions of the nature described were categorically excluded from protection under the Second Amendment. What was a statement about reserving judgment on issues not before the Court has, instead, been misconstrued as deciding those very issues.

Furthermore, the Defendants do not even attempt to explain in their brief the Dr. Jekyll and Mr. Hyde scenario that their argument results in, as both Plaintiffs have *post*-commitment possessed firearms and ammunition, including fully automatic machineguns,[16] in their official capacities as law enforcement and former military, without issue, pursuant to 18 U.S.C. § 925(a)(1); yet, the Defendants contend that they are too dangerous to be trusted with firearms in their private lives. Clearly, in this context, it makes absolutely no sense to argue that the Plaintiffs were mentally stable enough

---

[16] Plaintiff Yox has additionally possessed and utilized explosives. (Doc. 28-2, ¶ 16)

to possess firearms while serving the State and Federal Government, but are not stable enough to possess firearms in their private lives for purposes of self-defense.

### 2.    Level of Scrutiny To Be Applied

As Plaintiffs discussed at length in their Brief in Support of Their Motion for Summary Judgment (Doc. 29), Section V., C., 2., b., pgs. 29-30, in turning to the level of scrutiny applicable to this matter, in the event that this Court follows the precedent set-forth in *Marzzarella*, the question becomes whether strict or intermediate scrutiny applies, as the *Heller* Court already declared that rational basis scrutiny in inappropriate. *Heller*, 544 U.S. at 628, fn. 27.[17]

Since Plaintiffs filed their Brief in Support of Their Motion for Summary Judgment, wherein they argued that strict scrutiny should apply (Doc. 29, Section V., C., 2., b.), the Fourth Circuit issued a decision in *Kolbe v. Hogan*, No. 14-1945, 2016 U.S. App. LEXIS 1883 (4th Cir. Feb. 4, 2016) holding that "any law that would burden the 'fundamental,' core right of

---

[17] As discussed *supra*, the holdings in *Heller*, 554 U.S. at 634-35 and *McDonald*, 561 U.S. at 790-91 suggest that courts should not apply levels of scrutiny to Second Amendment challenges, as interest-balancing is not appropriate for core constitutional protections.

self-defense in the home by a law-abiding citizen would be subject to strict scrutiny." (*citing United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011)); *see also*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339-40 (2010)(declaring that strict scrutiny generally applies when a fundamental right is at stake). While the Fourth Circuit in *Kolbe* was addressing Maryland's prohibition on the purchase and possession of assault weapons and large capacity magazines, since 18 U.S.C. § 922(g)(4) burdens the right of Plaintiffs to possess a firearm for self-defense in their homes (Doc. 28-2, ¶¶ 11, 28), Plaintiffs contend that strict scrutiny should similarly apply in this matter and that it is not narrowly tailored to achieve a compelling governmental interest, especially in light of the fact that Plaintiffs are not currently mentally ill or suffering from any mental condition and have possessed, *post*-commitment, firearms, including fully automatic machineguns, without issue, in their capacities as law enforcement. For these same reasons, as discussed *infra*, the Defendants likewise cannot meet their burden under an intermediate scrutiny analysis.

3.    Second Amendment As-Applied Analysis

As this Court previously held in *Suarez v. Holder, et al.*, 1:14-CV-968, 2015 U.S. Dist. LEXIS 19378, *17 (M.D. Pa. Feb. 18, 2015), although

the "prohibitions discussed in *Heller* are presumptively valid" a "challenger

may rebut the presumptive validity through the use of an as applied

challenge." This Court went on to declare

> If the challenger can demonstrate that his circumstances are different
> from those historically barred from Second Amendment protections,
> he establishes that his possession of a firearms is conduct within the
> Second Amendment's protections and satisfies the first prong. Said
> differently in the context of § 922(g)(1), if a challenger can show that
> his circumstances place him outside the intended scope of § 922(g)(1),
> he establishes, as we read *Barton*, that he is the "law-abiding citizen"
> identified in *Heller*. And if he is a law-abiding citizen, the possession
> of a firearm for protection of hearth and home is not just
> conduct protected by the Second Amendment, it is the core of the
> Second Amendment's guarantee. Therefore, the first prong of
> *Marzzarella* would be satisfied. *Id*. at *17-18 (internal citations
> omitted).

This Court then went on to declare that

> [I]f a challenger satisfies *Barton* by demonstrating that he is outside
> the scope of § 922(g)(1), and thereby shows he is a law-abiding
> citizen who falls within the core of the Second Amendment's
> protection, any means-end scrutiny would be fatal in
> fact…Accordingly, we find that in the context of an as-applied
> Second Amendment challenge to § 922(g)(1), the analysis begins and
> ends with *Barton*. *Id*. at *18-19.

In applying the *Suarez* holding to this matter, although *Suarez* dealt

with a 922(g)(1) prohibition, Plaintiffs contend that there exists no basis to

treat the analysis different under 922(g)(4). As Plaintiffs have shown (1) that

the mentally ill were not historically prohibited, (2) that they are not

currently mentally ill, (3) that they have obtained judicial findings that they

can possess firearms without threat to themselves or others, and (4) that they have possessed firearms, *post*-commitment, including fully automatic machineguns, without issue in their capacities as law enforcement officers, Plaintiffs contend that consistent with *Suarez*, the first prong of *Marzzarella* is met and *any* means-end scrutiny would be fatal in fact.

Even if the Court were to ignore *Suarez* and apply intermediate scrutiny, the Defendants do not explain how there exists an important governmental objective in this matter, where both Plaintiffs have shown that they can possess firearms, including fully automatic machineguns, without issue, *post*-commitment.[18] If as the Defendants contend the primary governmental objective underlying 922(g)(4) is to protect the public from "armed mayhem," (Doc. 34, pg. 22)[19] then the Government should preclude Plaintiffs, and those similarly situated, from possessing firearms in a law

---

[18] *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)(the government cannot justify a burden on speech "by mere speculation or conjecture; rather, [it] . . . must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree"); *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)(to satisfy intermediate scrutiny, the challenged restriction cannot burden substantially more constitutional conduct than is necessary to further the government's important interest).

[19] It must be noted that the Defendants have failed to demonstrate any real harm that would result from Plaintiffs possessing firearms and ammunition for purposes of self-defense and the state courts have already found that neither Plaintiff poses a threat to himself or anyone else in possession of a firearm. Rather, as the Supreme Court denounced in *Edenfield*, the Defendants merely rely on speculation or conjecture.

enforcement capacity, as there exists no ability to protect the public in that situation. Rather, the Congress understood, as evidenced by 925(a) and NIAA, that individuals may have an isolated mental health instance, without being a threat to the public for the remainder of their lives.

Accordingly, and contrary to Defendants' assertions (Doc. 34, pgs. 23-30), the Congress does not believe that individuals who are involuntarily committed are "frequently subject to relapse into mental illness and, hence, potential dangerousness." If the Congress so believed, it would have excluded those who were involuntarily committed from the exception found in 925(a)(1), as it did with those convicted of domestic violence,[20] and would have never enacted NIAA, whereby, individuals can obtain federal relief through state-relief programs. More importantly, in relation to this matter, both Plaintiffs obtained Court Orders finding, *inter alia*, that they do not pose a threat to themselves or others in possessing a firearm.

Thus, under any of the aforementioned analyses, Plaintiffs are entitled to judgment in their favor.

C.    *Plaintiff Yox is entitled to judgment on Count II as juvenile commitments are not included within 922(g)(4)*

---

[20] *See*, Section 925(a)(1) excluding "sections 922(d)(9) and 922(g)(9)."

As Plaintiff Yox discussed in his Brief in Support of [His] Motion for Summary Judgment, Section V., F., (Doc. 29, pgs. 40-49), which Plaintiff incorporates by reference herein, 922(g)(4) does not apply to juvenile commitments and Defendants have acknowledged such in their Notice of Proposed Rulemaking in the Federal Register at Volume 79, pages 774 through 777 ("ATF-51P").

Without any explanation or analysis, Defendants simply state that the federal criminal laws regarding juveniles cited to by Plaintiffs [21] "are unavailing." (Doc. 34, pg. 41). Similarly, Defendants merely contend that the Congress's enactment of 18 U.S.C. § 922(x) is immaterial and that 922(g)(4) and 922(x) compliment each other. *Id*. However, the Defendants' arguments overlook the fact that the Congress was acutely aware of how to draft language specifically applicable to and inclusive of juveniles and if the Congress intended "person" to include juveniles, there was no reason to use the word "juvenile" in 922(x) as they would have simply stated a person, who is under the age of 18. Rather, the Congress was aware that the remainder of 922 was not applicable to juveniles and they sought to limitedly restrict juveniles in relation to what became 922(x). Moreover, the Congress, aware that a juvenile's parents generally, unless excused, need to

---

[21] 18 U.S.C. §§ 922(x)(5), 4101, 5031.

be involved in the proceedings, included 922(x)(6), which is noticeably absent from every other portion of 922, reflecting that the Congress never intended for the other provisions of 922 to apply to juveniles.

This is confirmed when bills considered and the debates related thereto are reviewed in relation to applying the 922(g) prohibitions to juveniles. For example, H.R. 1501, Juvenile Justice Reform Act of 1999, if enacted, would have included a new definition of "act of violent juvenile delinquency," and added a new sub-section of 922(g)(10) prohibiting a person who committed an act of "violent juvenile delinquency" from being able to possess a firearm. "An act of juvenile delinquency" was defined as "an adjudication of delinquency in Federal or State court, based on a finding of the commission of an act by a person prior to his or her eighteenth birthday that, if committed by an adult, would be a serious or violent felony." If juveniles were already considered within the gamut of 922(g), this provision would have been duplicative, as the juvenile would already be prohibited under 922(g)(1). This is further confirmed in relation to the House debate relating to H.R. 1501, where Representative Lofgren declared that "the background check that is applied under current law to adult criminals should be applied equally to juveniles who have committed a

criminal offense." 106 Cong. Rec. 22,535 (1999).[22] Representative

McCollum echoed this, stating "I believe most of us today support the

concept of a juvenile Brady law, in other words, a law that will prevent

people who commit serious violent acts as juveniles from owning a gun,

even after they reach the age of 18." *Id*. at 22,536. [23]

Furthermore, contrary to Defendants' statement that "Pennsylvania

law does not posit an age-based distinction between different types of

involuntary commitment" (Doc. 34, pg. 42), as Plaintiffs addressed in their

primary brief, Pennsylvania law, 35 P.S. § 10101.1(b)(1), does treat juvenile

commitments differently, including a completely different commitment

standard, than adults. (Doc. 29, pgs. 47-48). While for purposes of an

involuntary commitment for an adult, the physician must determine that the

adult is a danger to himself or others, under 35 P.S. § 10101.1(b)(1), the

physician need only *recommend* treatment, rather than conclude that the

juvenile is a danger to himself or others. Furthermore, the regulations

---

[22] *Available at*, https://www.gpo.gov/fdsys/pkg/CRECB-1999-pt16/html/CRECB-1999-pt16-Pg22535.htm

[23] *See also*, The Clinton Administration's Law Enforcement Strategy: Fighting Gun Violence and Keeping Guns Away from Criminals and Our Children (May 1999), declaring that "[t]he Clinton Administration is proposing an amendment to the Brady Law that would treat violent juveniles and violent adults in the same manner for purposes of determining whether they can buy a gun."

promulgated in relation to Pennsylvania's Mental Health and Procedures Act, 50 P.S. 7101, *et seq.*, also acknowledge different criteria for where juveniles may be committed, in comparison to those eighteen years of age and older. *See*, 55 Pa. Code §§ 5100.84(a), (b).

Additionally, Defendants contend that "the GCA unambiguously defines the term 'person' to include 'any individual,' regardless of age"; yet, in ATF-51P, ATF explicitly states that it "is considering *clarifying* whether the term 'committed to a mental institution' includes a commitment that occurred when the person was under the age of 18." (Doc. 34 at 43 & fn. 15; ATF-51P (emphasis added)). If the GCA unambiguously defined the term "person" to include juveniles, ATF would not need to clarify the law and would lack the authority to regulate inconsistent with the Congress's dictate that "person" is inclusive of juveniles, as Defendants contend. Rather, ATF-51P reflects that 922(g)(4) does not address juveniles, and in the absence of any such inclusion by the Congress, ATF is entering into rulemaking to address the application of juveniles to 922(g)(4).

Lastly, Defendants ignore many of the numeric underpinnings of the GCA in relation to their argument that "Plaintiff Yox's reading of the statute would permit a person committed just of his eighteenth birthday to possess a firearm immediately upon his release. There is no reason to believe that the

Congress intended such a result." (Doc. 34, pg. 43). In point of fact, in relation to whether an individual becomes prohibited from possessing firearms under federal law in relation to a criminal conviction, 922(g)(1) declares that such prohibition is triggered where the individual is convicted of "a crime punishable by imprisonment for a term exceeding one year." Section 921(a)(20) then goes on to define a "crime punishable by imprisonment for a term exceeding on year," *inter alia*, as excluding "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." Hence, for example, if an individual was convicted in Pennsylvania of a misdemeanor of the second degree, which did not involve domestic violence, since the maximum it could be punished by is two years or 730 days, pursuant to 18 Pa.C.S. § 106(b)(7), the individual would not be prohibited; however, if the individual was convicted of a misdemeanor which could be punished by 731 days or more, such as a misdemeanor first degree in Pennsylvania,[24] he would be prohibited. Hence, there are a number of instances under the GCA, where the difference of a single day determines whether or not an individual is prohibited.

In this matter, as Plaintiff Yox was committed as a juvenile, prior to

---

[24] *See*, 18 Pa.C.S. § 106(b)(6).

his eighteenth birthday,[25] he is entitled to judgment in his favor, as juvenile commitments are not included in the prohibition of 922(g)(4).

D. *Defendants are not entitled to judgment on Count III (due process) as Plaintiffs have shown a valid Second Amendment challenge*[26]

As Plaintiffs[27] did not move for summary judgment on Count III, based on the absence of a decision on Count I, which will impact any determination in relation to Count III, but Defendants have now sought summary judgment on Count III, Plaintiffs contend that Defendants are not

---

[25] It should also be noted that he was also released prior to his eighteenth birthday.

[26] Plaintiff Yox acknowledges that the Court would have seemingly dismissed Count III in totality (Doc. 21, pgs. 16-26), if the Defendants had requested that dismissal against Yox in their MTD, even if Plaintiffs had established a protected liberty or property interest. Therefore, Plaintiff Yox will limitedly respond to Defendants' contentions, so as not to burden the Court, without waiving the ability to challenge such on appeal.

Plaintiffs, based on *In re Hancock*, 719 A.2d 1053 (Pa. Super. Ct. 1998), concede that with due regard to the evidence available to them, they are unable to show that a standard other than "clear and convincing" was utilized in their commitments and therefore respectfully withdraw their argument that Pennsylvania's MHPA is not consistent with *Addington v. Texas*, 441 U.S. 418 (1979).

[27] Plaintiff Keyes acknowledges that this Court dismissed his due process claim; however, to the extent this Court decides to reconsider, *sua sponte*, its decision dismissing his claims, he also argues in support of this analysis. For brevity, he respectfully incorporates the arguments of fn. 10, *supra*, herein.

entitled to judgment, as Plaintiffs, at a minimum, have shown a valid Second Amendment claim, as set-forth *supra*; thereby, establishing a legally protected liberty and property interest.[28]

While Plaintiffs acknowledge the unpublished decision in *Bell v. United States*, 574 F. App'x 59 (3rd Cir. 2014), which Defendants and the Court have raised, wherein the Third Circuit rejected a procedural due process challenge to 18 U.S.C. § 922(g)(1), this matter is clearly distinguishable. While the Third Circuit did not specifically articulate it's own reasoning, it did affirm "the reasons stated by the District Court." *Id*. at 61. The District Court had reasoned that "[t]he plain language of [§ 922(g)(1)] makes clear Congress' decision to bar *all* convicted felons (not merely those with violent tendencies or who otherwise present an ongoing danger to society) from possessing firearms." *Bell v. United States*, No. 13-5533, 2013 U.S. Dist. LEXIS 152791, *8 (E.D. Pa. Oct. 24, 2013)(internal quotations omitted). In this matter, however, as discussed *supra*, the mentally ill were not prohibited historically, unlike felons, and the Congress has not sought to bar *all* individuals involuntarily committed from possessing firearms, as reflected by NIAA and 925(a)(1).

---

[28] *See, Mudric v. Attorney Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006)(holding that a "cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie.")

In enacting and amending 922(g)(4) and 925(a)(1), there is simply no evidence that Congress intended to deprive such persons, who were previously committed and have since recovered, of any practicable means of regaining their Second Amendment rights. To the contrary, the legislative history of the Firearms Owners' Protection Act ("FOPA") readily evidences that the posterity of due process was specifically within the ambit of congressional intent. Pub. L. No. 99-308, 100 Stat. 449, 459 (1986). The following excerpt is taken from the legislation, which provided the most current iteration of FOPA and specifically amended both 922 and 925:

**SECTION 1. SHORT TITLE AND CONGRESSIONAL FINDINGS**

(a) Short Title. – This Act may be cited as the "Firearms Ownership Protection Act".
(b) Congressional Findings. – The Congress finds that –
    (1) the rights of citizens-
        (A) to keep and bear arms under the second amendment to the United States Constitution…
        (C) <u>against uncompensated taking of property, double jeopardy, and assurance of due process of law under the fifth amendment…</u>

require additional legislation to correct existing firearms statutes, enforcement policies; and…

(2) additional legislation is required to reaffirm the intent of the Congress, as expressed in section 101 of the Gun Control Act of 1968, that <u>"it is not the purpose of this title to place any undue or unnecessary Federal Restrictions or burdens law abiding citizens with respect to the acquisition, possession, or use of firearms…and</u>

> that this title is not intended to discourage or eliminate the private ownership or use of firearms by law abiding citizens for lawful purposes.". *Id*. (emphasis added).

Additionally, Section 925(c)[29] and NIAA specifically acknowledge, by providing for relief, that some of those once committed can safely possess firearms without threat to public safety.

While Plaintiffs acknowledge that pursuant to 50 P.S. § 7303, they were provided some form of hearing, that hearing was to determine whether they should be hospitalized for a period of more than 120 hours and never addressed whether they should be barred in perpetuity from possessing firearms and ammunition. Plaintiffs simply and respectfully contend that before being stripped of a constitutional right in perpetuity, they should be provided some form of due process, where the court, board, commission or judge takes in evidence and makes specific findings relating to whether the person should be prohibited in perpetuity.

Accordingly, Defendants are not entitled to summary judgment.

## IV.     CONCLUSION

For the reasons specified herein, Plaintiffs respectfully request that the

---

[29] There is no dispute that relief is not current available under 925(c) due to the appropriations restriction. *See*, Consolidated Appropriations Act, 2016, HR 2029, at 61, *available at*, https://www.congress.gov/114/bills/hr2029/BILLS-114hr2029enr.pdf

Court grant their Motion for Summary Judgment and deny Defendants'

Motion for Summary Judgment.

Respectfully Submitted,

_____
Joshua Prince, Esq.
Attorney Id. No. 306521
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA 19505
610-845-3803 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com

Attorney for Plaintiffs

## **Certificate of Compliance**

I certify that the foregoing brief complies with the Court's Order of March 1, 2016, as the brief does not exceed 6,500 words, excluding the caption, table of contents, table of authorities and signature blocks, as counted by the Microsoft Word program on which it was prepared.

Joshua Prince, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I, Joshua Prince, Esq., of Prince Law Offices, P.C. hereby certify that

I served a copy of the *Plaintiffs' Combined Reply Brief in Support of Their*

*Motion for Summary Judgment, and in Opposition to Defendants' Motion*

*for Summary Judgment*, through the Court's ECF system, as follows:

Daniel Riess, Esq.
Daniel.Riess@usdoj.gov
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530


**Prince Law Offices, P.C.**


Date: March 3, 2016                    By:

Joshua Prince, Esq.
Attorney Id. No. 306521
Prince Law Offices, P.C.
646 Lenape Rd.
Bechtelsville, PA 19505
610-845-3803 ext 81114
610-845-3903      (fax)
Joshua@PrinceLaw.com

Attorney for Plaintiffs